PENNSYLVANIA RAILROAD COMPANY *v.* JONES.

PENNSYLVANIA RAILROAD COMPANY *v.* STEWART.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 40, 41. Argued October 26, 29, 1894.—Decided December 10, 1894.

It is the duty of a railroad company, running its trains in connection with other lines, and taking passengers and freight for transportation to points upon connecting lines, to carry them safely to the end of its own

line, and there deliver them to the next carrier in the route beyond, and, in the absence of a special agreement to extend its liability beyond its own lines, such liability will not attach; and such agreement will not be inferred from doubtful expressions or loose language, but it must be established by clear and satisfactory evidence.

The evidence in this case is reviewed, and it is *held* not to establish a special undertaking by the Pennsylvania Railroad Company that the plaintiffs should be safely carried in the train of the Virginia Midland Railway Company, while proceeding along the road of the Alexandria and Washington Railroad Company, between the cities of Alexandria and Washington; but that there was evidence which would warrant a jury in finding that the Baltimore and Potomac Railroad Company, the Alexandria and Washington Railroad Company, and the Alexandria and Fredericksburg Railway Company had made such a special undertaking, and were jointly liable to the plaintiffs under it.

An advertisement by a railroad company that it runs or connects with trains of another company, so as to form through lines, without breaking bulk or transferring passengers, does not tend to show a contract between the companies to share profits and losses.

When a railroad for which a receiver has been appointed is practically managed and controlled by the agents and employés of the company, and the receiver's function as to business with connecting lines is restricted to the receipt of its share of the net earnings, and a passenger who receives an injury while being transported upon it to a connecting line, brings an action against the company and other connecting lines to recover damages therefor, there is no error in instructing the jury that if they shall find the company guilty of negligence their verdict will be against it.

In this case the Alexandria and Fredericksburg Railway Company further set up that at the time of the happening of the injury causing the damages sued for, the road was in the hands of mortgage trustees, and that it therefore was not then a common carrier. *Held*, there was evidence which justified the court in submitting the question of the exclusive possession by the trustees to the jury, and that there was no error in instructing the jury that in order to acquit the company from responsibility, it should be shown that the management and operation of the road was conducted by the trustees, to the entire exclusion of the company, its officers and board of directors, and that this fact was notorious and could be presumed to be known to the public.

THE case is stated in the opinion.

*Mr. Enoch Totten* for plaintiffs in error.

*Mr. W. L. Cole* and *Mr. William A. Cook* for defendants in error.

Mr. Justice Shiras delivered the opinion of the court.

These were suits brought in the Supreme Court of the District of Columbia, and tried at special term, in July, 1885, based upon allegations of personal injuries received by the plaintiffs while in the performance of their duties as railway postal clerks on the mail route which extended from Charlotte, N. C., to Washington, D. C.

The cases were tried together, and each of the plaintiffs obtained a verdict and judgment, entered May 3, 1890, against all of the defendants except the Virginia Midland Railway Company. The other defendants, namely, the Pennsylvania Railroad Company, the Baltimore and Potomac Railroad Company, the Alexandria and Fredericksburg Railway Company, and the Alexandria and Washington Railroad Company, appealed to said court in general term, where the judgment of the special term was affirmed, and afterwards they caused the cases to be brought here on writs of error.

The undisputed facts in the cases are substantially as follows: About four miles from Washington, at a place known as Fourmile Run, the tracks of the Alexandria and Washington railroad were laid through a short tunnel or culvert under a canal. This culvert was not of sufficient width to permit trains to pass each other therein, and the double tracks, which extended over the whole line, closely interlaced in the culvert, and for a short distance from each end thereof, but each track remained practically unbroken and independent, so that in passing this point it was not necessary that a train on either track should stop, provided no other train was upon or about to be upon this portion of the road where the tracks converged. In or near this culvert, at about 10 o'clock on the night of the 19th of February, 1885, while the plaintiffs were engaged in the performance of their duties as postal clerks in a car attached to a north-bound passenger train of the Virginia Midland Railway Company, a collision occurred upon the interlaced tracks, between that train and a fast-freight train of the Alexandria and Fredericksburg Railway Company, bound south, which resulted in the death of four persons and in serious injuries to each of the plaintiffs.

The essential allegations of both declarations filed by the plaintiffs were that all of the defendant companies were engaged, as common carriers, in the transportation of passengers, persons, and freight upon and along the several lines of the railroads belonging to them, and along the line, among others, of the Alexandria and Washington Railroad Company, under an arrangement or contract for their common benefit, by which they were interested jointly in the running and management of their roads, and that through the negligence of the defendant companies the collision occurred which caused the injuries complained of.

The defendants all appeared to the action and severally put in pleas of not guilty, and afterwards, upon leave granted by the court, each company filed an additional plea averring that "it was not at the time of the alleged injury and never was a common carrier of passengers and freight in manner and form as in said declaration alleged."

A large amount of evidence was put in on behalf of the plaintiffs for the purpose of sustaining their allegations of negligence on the part of employés of one or more of the defendant companies, and to show that the roads owned by those companies were operated in connection with each other on joint account, or that there was such community of interests among them as would make all of them liable for the acts of agents or employés of one.

The Virginia Midland Railway Company introduced evidence which tended to prove that its road extended no farther north than Alexandria, and that its trains were run over the roads of the other companies under an arrangement by which it paid certain prices per passenger and per ton of freight for the running privileges given it, and by which it was required to admit on board its north-bound trains at Alexandria an agent of the company or companies which controlled the road north of that place, who had therefrom the exclusive direction of the trains. It appeared, however, that although such agent was on the passenger train in question, employés of the Virginia Midland Railway Company performed the actual work of controlling the train.

The evidence on the part of the other defendants was directed mainly to showing that at the time of the collision the road of the Alexandria and Washington Railroad Company and the franchises necessary for its operation were in the hands of a receiver, appointed by the Circuit Court of the United States for the Eastern District of Virginia; that the company had no rolling stock, but that the receiver permitted other roads to use its tracks under certain agreements which had been made between that company and other companies before his appointment; and that the business of the Alexandria and Fredericksburg Railway Company was being carried on by trustees who were possessed of the property and franchises of this company by virtue of a deed of trust executed by it on June 1, 1866, to secure the payment of the principal and interest of certain of its first-mortgage bonds.

Many exceptions were taken by the defendants during the trial to the admission and rejection of evidence, to the refusal of the court to give the jury certain instructions proposed by them, and to the giving of other instructions against their objections.   These exceptions constitute the grounds of the assignments of error.

The suits were brought against the Pennsylvania Railroad Company, a corporation organized under the laws of the State of Pennsylvania; the Baltimore and Potomac Railroad Company, a corporation organized under the laws of the State of Maryland and acts of the Congress of the United States; the Alexandria and Washington Railroad Company, the Virginia Midland Railway Company, and the Alexandria and Fredericksburg Railway Company, which three last-mentioned companies were corporations organized under the laws of the State of Virginia.

The theory upon which the plaintiffs proceeded, in including these five companies in the actions, was thus expressed in the declarations:

" For that heretofore, to wit, on the 19th day of February, 1885, and prior thereto, the said defendants were engaged as common carriers in the transportation of passengers, persons, and freight upon and along the several lines of railroad be-

longing to said companies, and, among others, along the line of the road of the said Alexandria and Washington Railroad Company, running between the cities of Alexandria and Washington, under an arrangement or contract for their common benefit, the full and exact terms of which are unknown to this plaintiff, and by which they were jointly interested in the running and management of the said railroads."

The Pennsylvania Railroad Company filed a plea of not guilty, and a special plea that said company " was not, at the time of the alleged injury, and never was, a common carrier of passengers and freight, in manner and form as in said declaration alleged."

After the testimony was closed on both sides the counsel of the Pennsylvania Railroad Company moved the court to instruct the jury that, upon the pleadings and evidence, the said company was entitled to a verdict in its favor. To the refusal of the court to grant such instruction, exception was duly taken, and that action of the court is here assigned for error.

As it is not pretended that there was not evidence sufficient to warrant the jury in finding that the plaintiffs' injuries were caused by carelessness in the management of one or both of the trains, our inquiry must be directed to the other issue, that is, whether it was shown, by competent evidence, that the Pennsylvania Railroad Company was engaged, at the time of the accident, as a common carrier in the transportation of freight and passengers along the line of the road of the Alexandria and Washington Railroad Company, running between the cities of Alexandria and Washington, under an arrangement or contract with the other companies defendant for their common benefit, and by which they were jointly interested in the running and management of said railroad.

It is conceded, or sufficiently appears in the evidence, that the running and management of the road of the Alexandria and Washington Railroad Company were not within the scope of the ordinary powers of the Pennsylvania Railroad Company as a corporation of the State of Pennsylvania. To render the latter company responsible for what might take place on a

railroad in another State some contract or arrangement to that effect must be made to appear.

It is also disclosed by the evidence that neither of. the trains, by whose mismanagement the accident was caused, was a train belonging to the Pennsylvania Railroad Company, and that the men in charge were not in the immediate employ of that company.

The general principles applicable to the present inquiry are well settled, and have. frequently been declared by this court. In *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318, 324, it was said : " It is the duty of the carrier, in the absence of any special contract, to carry safely to the end of his line and to deliver to the next carrier in the route beyond. This rule of liability is adopted generally by the courts in this country," and " is in itself so just and reasonable that we do not hesitate to give it our sanction." And in *Railroad Co.* v. *Pratt,* 22 Wall. 123, 129, it was said : " The fair result of the American cases limits the carrier's liability as such, when no special contract is made, to his own line." These cases were followed in *Myrick* v. *Michigan Central Railroad Co.*, 107 U. S. 102, 107, and it was there said : " In the absence of a special agreement to extend the carrier's liability beyond his own route, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

Was there shown, then, in the present case, a special contract or undertaking by the Pennsylvania Railroad Company that the plaintiffs should be safely carried in the train of the Virginia Midland Railway Company, while proceeding along the road of the Alexandria and Washington Railroad Company, between the cities of Alexandria and Washington ?

There was no attempt to show any such contract or agreement between these plaintiffs and the Pennsylvania Railroad Company. The liability of the latter is sought to be found in an alleged existing agreement between that company and the other companies defendant, whereby the said companies were " jointly interested in the running and management of said railroads."

Moreover, it was not claimed that this alleged agreement was in writing or was to be found in any resolution of the board of the Pennsylvania Railroad Company. Indeed, the averment of the declaration was that "the full and exact terms of the alleged contract were unknown to the plaintiffs."

The right of recovery in this case against the Pennsylvania Railroad Company was rested by the plaintiffs entirely upon supposed business relations existing, at the time of the accident, between the railroad companies defendant. It is necessary, therefore, that they should point to evidence satisfactorily establishing the existence and nature of those business relations. A careful consideration of the evidence appearing in the record has failed to satisfy us that there existed a contract or agreement between these railroad companies upon which liability on the part of the Pennsylvania Railroad Company can be based. Let us briefly consider the particulars of the evidence relied on by the plaintiffs.

The annual reports to the stockholders of the Pennsylvania Railroad Company were put in evidence. That of March 2, 1885, contained the following statement:

"The board herewith submit their report for 1884, with such data relating to the lines controlled by your company as will give you a clear understanding of their physical and financial condition."

Also the following:

"The Baltimore and Potomac Railroad connects your line with Washington and the South."

And from the report of March, 1886, the following quotation was cited:

"The board herewith submits its report for the year 1885, with such data as relate to the lines embraced in your system as will give you a clear understanding of their physical and financial condition."

It was also shown by said report that the Pennsylvania Railroad Company owned, on December 31, 1885, $1,000,000 of the bonds of the Alexandria and Fredericksburg Railway Company, and $2,000,000 of the bonds of the Baltimore and Potomac Railroad Company, and 60,852 shares of the Balti-

more and Potomac Railroad Company's stock, and 217,819 shares of the stock of the Philadelphia, Wilmington and Baltimore Railroad Company.

A railroad map showing a continuous line of railroad between Philadelphia and Quantico, with letters signifying that the roads embraced therein were the Philadelphia, Wilmington and Baltimore, the Baltimore and Potomac, the Alexandria and Washington, and the Alexandria and Fredericksburg Companies, was put in evidence.

It was also proved that a ticket issued by the Pennsylvania Railroad Company was sold in Baltimore, at the office of the Northern Central Railroad Company, on account of the Alexandria and Fredericksburg Railway Company, and it was likewise proved that the Pennsylvania Railroad Company owned stock in the Alexandria and Washington and the Alexandria and Fredericksburg Railway Companies, and that some persons who were officers of the Pennsylvania Railroad Company were likewise officers of these companies. It was also shown that the employés of the Baltimore and Potomac, the Alexandria and Washington, and the Alexandria and Fredericksburg roads were paid from a pay-car, whose brakeman and conductor wore a blue uniform with silver buttons, which was said to be the uniform of the Pennsylvania Railroad Company.

Newspaper advertisements were put in evidence, calling the attention of the travelling public to the Great Pennsylvania Route to the Northwest and the Southwest, and it was shown that James R. Wood was general passenger agent, and Charles E. Pugh general manager, of the Pennsylvania Railroad Company, stationed at Washington; and it likewise appeared that they occupied similar positions in the Philadelphia, Wilmington and Baltimore, the Baltimore and Potomac, Alexandria and Washington, and the Alexandria and Fredericksburg companies.

John S. Barbour testified that he had acted for some years as president and receiver of the Virginia Midland Railway Company, his official relations with that company ceasing in the latter part of 1884. His testimony was to the effect that he had made arrangements for the running of the trains of the

Midland Railway Company over the road between Alexandria and Washington. He says that there was no contract ever signed, but that his conversations were with officers of the Pennsylvania Railroad Company, particularly naming Mr. Scott and Mr. Roberts, the latter being president of both the Pennsylvania Railroad Company and the Alexandria and Fredericksburg Railway Company; that the Pennsylvania authorities were running the Baltimore and Potomac, and a through line from New York to Quantico; that the Midland Railway Company was to pay 35 cents for each passenger and so much on freight for each carload or by the ton; that the Midland Railway Company used their own rolling stock and crews. He further stated that he would not say to whom or to what companies his company paid compensation for the use of the road, and that his recollection of the details of the agreement was indistinct, as it was made in 1876. On cross-examination he stated that his company settled accounts with the officers of the Baltimore and Potomac Railroad Company or those of the Alexandria and Fredericksburg Railway Company.

The plaintiffs further gave evidence to show that on the arrivals of the trains of the Virginia Midland Railway Company at Alexandria they were turned over to the authorities operating said roads between that place and Washington, and run between those two points both ways under the absolute control of the last-named parties, who had the right to and did place a pilot in charge of said trains to run the same between those points; that said pilots were sometimes employés of the Baltimore and Potomac Railroad Company, and sometimes of the Alexandria and Fredericksburg Railway Company; that all other persons engaged in running said Virginia Midland trains were employés of the last-named company; that the pilot who took charge of the Virginia Midland train on which plaintiffs were, on the 19th day of February, 1885, when it arrived at Alexandria, and under whose direction and control it was at the time and place of the accident, was Charles F. Bennett, whose uniform was such as is worn by the employés of the Pennsylvania Railroad Company, except that on the buttons were the letters "B & P," and whose name

was on the pay-rolls of, and he was paid by, the Alexandria and Fredericksburg Railway Company.

In connection with the foregoing there was evidence, proceeding partly from both parties, tending to show that the mails over said route between Alexandria and Washington were carried, not under any express contract, but under the general statutes, and the arrangement of the government for carrying all mails, either through or local, between Washington and Alexandria, was with the Alexandria and Washington Railroad Company, and that road was paid for transporting for the quarter beginning January 1 and ending March 31, 1885, by drafts or checks, and that no other railroad was paid by the United States for conveying mails between said points; that said sum so paid was divided among the Alexandria and Washington, Alexandria and Fredericksburg, and the Baltimore and Potomac Railroad Companies; that about the time of said collision, and for some time prior thereto, both freight and passenger trains passed over the road between Alexandria and Washington, some of them hauled by engines marked B. and P., some of them marked A. and F., and some passenger trains marked B. and P.; that the compensation paid by the Virginia Midland Railway Company for the privilege of running its trains between Washington and Alexandria was 35 cents per passenger and $4 per carload of freight, which was paid by it periodically to J. S. Lieb, the treasurer of the Alexandria and Washington, Alexandria and Fredericksburg, and Baltimore and Potomac Railroad Companies.

The plaintiffs further showed that the Pennsylvania Railroad Company paid consignees for goods destroyed in the collision, and then made demand upon Wilkins, the receiver of the Alexandria and Washington Railroad Company, for reimbursement, and claimed this fact as admission that the Pennsylvania Railroad Company was a common carrier of these goods at the time and place of destruction.

The foregoing is a condensed statement of the evidence relied on as establishing such a relation between the railroad companies, owning the roads and managing the trains at the

time and place of collision, and the Pennsylvania Railroad Company, as to make the latter responsible to the plaintiffs for their injuries.

Some of this evidence was objected to by the counsel of the Pennsylvania Railroad Company as incompetent for the purpose for which it was offered. But we do not deem it necessary to critically examine these objections. Taking the plaintiffs' evidence as a whole, and supplementing it with such facts, favorable to them, as appear in the defendants' evidence, we are unable to see that a case was made out as against the Pennsylvania Railroad Company.

That the Pennsylvania Railroad Company owned stock and bonds of some of the other companies defendant did not tend to show a partnership or agreement to run the roads of the latter on common account. Such ownership rather went to explain why some of the officers of the Pennsylvania Railroad Company held official positions in the other companies, and to show why their officers were consulted about the arrangement made between the Alexandria and Washington, the Alexandria and Fredericksburg, the Baltimore and Potomac Railroad Companies, and the Virginia Midland Railway Company, for the use by the latter of the roads of the former between the cities of Alexandria and Washington, as testified to by J. S. Barbour, and also explains the references made in the reports of the Pennsylvania Railroad Company to these roads as connecting with their system.

That the Pennsylvania Railroad Company paid consignees for goods destroyed in the collision, may justify an inference that there was some agreement between the owners of the goods and the Pennsylvania Railroad Company that the latter should be responsible for the goods beyond their own line, but, in that event, the responsibility arose out of such contract, and not out of a contract between the railroad companies. It was, indeed, contended that the act of the Pennsylvania Railroad Company in demanding reimbursement from the Alexandria and Washington Railroad Company for a proportion of such payment is indicative of an existing arrangement between the companies for dividing such losses.

But an examination of the evidence, in this particular, plainly shows that, though the words "proportion due" appear at the head of the column stating the amount demanded, yet that the actual demand was for the entire loss, and not for a part or proportion thereof. Such a demand, therefore, is evidence that no agreement existed for a participation in losses.

That the Pennsylvania Railroad Company advertised that it ran trains, or connected with trains of other companies, so as to form through lines, without breaking bulk or transferring passengers, did not tend to show any contract or agreement between the companies to share profits and losses. Nor was there evidence, in the present case, that there was any actual participation by the Pennsylvania Railroad Company in the earnings of the other companies which used the road between the cities of Alexandria and Washington. On the contrary, the evidence affirmatively showed that such earnings, including what was paid by the United States for the transportation of mails, were divided between the other companies, and went, none of them, to the Pennsylvania Railroad Company.

Without dwelling longer on this feature of the case, our conclusion is, that the Pennsylvania Railroad Company was entitled to the peremptory instruction asked for in its favor.

Our views respecting the exceptions urged on behalf of the other plaintiffs in error are briefly expressed as follows: There was evidence from which the jury might properly infer that the railroad between the cities of Alexandria and Washington was managed and controlled for the common use of the Baltimore and Potomac Railroad Company, (owning that portion of the route that lies between Washington and the south end of the Long Bridge,) the Alexandria and Washington Railroad Company, (owning that portion between the south end of the Long Bridge and St. Asaph's Junction,) and the Alexandria and Fredericksburg Railway Company (owning the line between St. Asaph's Junction and Alexandria); that the gross earnings of these companies, derived from this line between Alexandria and Washington, including what the Virginia Midland Railway Company paid for the privilege of running its trains over these tracks and what was received for transportation of mails,

went into the hands of a common treasurer, and were by him, after paying operating expenses, divided among the three companies, according to some rule, not very definitely shown, but apparently in proportion to the miles of track of each road; that the operating and accounting officers of the three companies were the same; that the freight train in question was, at the time of the collision, on that portion of the road which belonged to the Alexandria and Washington Railroad Company; that the engineer and fireman were employés of the Baltimore and Potomac Railroad Company; that the engine was that of the Alexandria and Fredericksburg Railway Company; that the conductor and brakemen were employés of that company; and that the passenger train was in charge of a pilot employed and paid by the three companies, in pursuance of an arrangement to that effect.

Such a state of facts would, we think, warrant a finding of joint liability of these three companies to the plaintiffs, unless certain facts put in evidence by the Alexandria and Washington Railroad Company and by the Alexandria and Fredericksburg Railway Company exonerate them respectively from such liability.

The Alexandria and Washington Railroad Company filed a plea of not guilty, and likewise a plea denying that said company was, at the time of the alleged injury, a common carrier of passengers and freight in manner and form as in the declaration alleged.

In support of the issues thus formed, the Alexandria and Washington Railroad Company put in evidence a record of the Circuit Court of the United States for the Eastern District of Virginia, showing that in a suit of Alexander Hay against said company, on January 19, 1882, George C. Wilkins was appointed receiver of said company, and was directed, after giving bond, to take possession of the railroad, tracks, engines, and property, real and personal, to the company belonging, and to run and operate said railroad for the carriage of freight and passengers, and to make from time to time all needful and proper traffic arrangements with other roads for the exchange of business; and it was further thereby ordered that

said receiver should, as soon as may be, make and file with the clerk of the court an inventory of all the real and personal property that came into his possession as receiver. The said defendant further gave evidence tending to show that said receiver, on the 19th day of June, 1882, took possession of said railroad in pursuance of said decree, and had exclusively held possession and operated and maintained said railroad until after the 19th day of February, 1885; that the inventory of property received by him, which was put in evidence, disclosed, among other things, a single track from Duke Street in Alexandria to St. Asaph's Junction, and a double track from the said junction to the south end of the Long Bridge, with sidings, bridges, etc. The evidence further tended to show that said company had no cars, engines, or rolling stock when the receiver took possession, and that none was acquired afterwards; that the receiver made all his returns of money received to the said Circuit Court, and that such moneys were carried through certain arrangements existing with the Baltimore and Potomac Railroad Company, the Virginia Midland Railway Company, and with DuBarry and Green, trustees of the Alexandria and Fredericksburg Railway Company; that under this arrangement the gross receipts of the operation of the route between Alexandria and Washington went into the hands of J. S. Lieb, treasurer, and through a common auditor the net proceeds were distributed *pro rata,* and to the receiver was paid the *pro rata* share of the Alexandria and Washington road.

Thereupon the Alexandria and Washington Railroad Company moved the court to instruct the jury that said company was, upon the pleadings and evidence, entitled to a verdict in its favor, and also moved the court to instruct the jury that if they were satisfied from the evidence that all the property of the Alexandria and Washington Railroad Company was, at the time of the accident, in the exclusive control of George C. Wilkins, the receiver thereof, appointed by the Circuit Court of the United States, the verdict must be in favor of the Alexandria and Washington Railroad Company.

Both these prayers for instructions were refused by the court,

and the case was submitted to the jury under instructions, whose validity is brought before us by the bills of exception. The plaintiffs, to overcome this evidence on behalf of the Alexandria and Washington Railroad Company, put in evidence a report made to the board of public works of the State of Virginia, signed and sworn to by John S. Lieb, treasurer, and H. H. Carter, superintendent of the Alexandria and Washington Railroad Company, for the year 1885. In this report nothing is said about an existing receivership, and there are statements of expenses in repairing engines and tenders, and in paying conductors, engineers, and firemen. It was also shown that at a meeting of the board of directors of the Alexandria and Washington Railroad Company, held in Philadelphia on November 27, 1876, John S. Lieb was appointed agent to receive and receipt for moneys due or to become due the company for transportation of mails between Washington and Alexandria; and that the warrants on the United States Treasury, in payment for carrying the mail between Alexandria and Washington for the quarter ending March 31, 1885, were made payable to the order of John S. Lieb, agent of the Alexandria and Washington Railroad Company. It also was made to appear, by the testimony of Wilkins, the receiver, that he did not make the arrangement by which the trains of the Virginia Midland Railway Company, of the Alexandria and Fredericksburg Railway Company, and of the Baltimore and Potomac Railroad Company ran over the road of the Alexandria and Washington Railroad Company, but that he found an arrangement under which this was done when he was appointed, and he permitted it to continue; that he sold no tickets over the Alexandria and Washington railroad; that the Alexandria and Washington railroad had no rolling stock or employés in his employment or control as receiver; that he did not know which of the said companies, the Alexandria and Fredericksburg, furnished the rolling stock and employés to run the local trains over the Alexandria and Washington railroad while he was receiver.

Upon the issue thus formed by the pleadings and evidence, the court below instructed the jury as follows:

" The Alexandria and Washington Railroad Company makes the plea that it was not a common carrier on the road at the time and place of the accident in question, because, they say, the road between Alexandria and Washington was at the time under the control of a receiver theretofore duly appointed. It is not disputed that Mr. Wilkins had been appointed receiver, and held his office at the time of the accident. The question now is whether he alone is liable for injuries received on the road by reason of negligence, or whether the Alexandria and Washington Railroad Company is not liable, notwithstanding the receivership.

" If you find from the evidence that the Alexandria and Washington Railroad Company was carrying the United States mail between Alexandria and Washington, and the plaintiffs were in charge thereof as postal clerks, duly commissioned and designated by the United States for that duty, and the Alexandria and Washington Railroad Company was paid by the United States by drafts payable to the order of the agent of that company appointed by its board of directors to receive the same, and that the freight and passenger trains, which collided and caused the injury to the plaintiffs, were running over said road under an arrangement made by the parties in control of said road prior to the appointment of the receiver of said road, and if when the receiver was appointed he continued in office as superintendent, general manager, and treasurer, the same persons as had heretofore discharged the duties of these positions, and if the business of this railroad, so far as was known to the public, was continued in the same way, so far as the general public could know, as before, and was so conducted at the time of the accident, and the only substantial duty that the receiver discharged was to receive the net earnings of the road from the treasurer and to account therefor to the court by which he was appointed, then if you shall find that the Alexandria and Washington Railroad Company was guilty of negligence, from the evidence and under the instructions of the court, your verdict will be against it, and for the plaintiffs.

" But if you are satisfied that the business on the Alex-

andria and Washington Railroad, so far as the interests of the Alexandria and Washington Railroad Company were concerned, was conducted by the receiver after his appointment, and to the time of the collision, in his own name and in such manner that it could be generally known by the public that he and not the company conducted the business and controlled the road and its management, and that he did so to the entire exclusion of any control or participation by the Alexandria and Washington Railroad Company, its officers and board of directors, then your verdict should be for the Washington and Alexandria Railroad Company."

We do not think that the court erred in admitting evidence tending to show that, practically, the road was managed and controlled by the agents and employés of the company, and that the receiver's functions were restricted to the receipt of its share of the net earnings, and, with such evidence before the jury, we do not perceive any substantial error in the instructions given to the jury. It could not be safely said that, in no case, evidence should be received to show that a receiver contented himself with receiving a share of the net earnings of a railroad which he permitted to be managed by the officers and employés of the company owning the road, in connection with those of other companies having a common interest.

A similar question was decided by this court in the case of *Railroad Company* v. *Brown*, 17 Wall. 445, 450. There a railroad was run on the joint account of lessees on the Virginia end of the road, and of the receiver on the end in the District. A suit was brought against the railroad company by a passenger, who recovered a verdict and judgment. It was urged in this court, in pursuance of exceptions duly taken, that the railroad company was not liable for anything done while the road was operated by the lessees and the receiver, and it was said through Mr. Justice Davis:

"It is the accepted doctrine in this country that a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of

lessees. The operation of the road by the lessees does not change the relations of the original company to the public. It is argued, however, that this rule is not applicable where the proceeding, instead of being voluntary, is compulsory, as in the case of the transfer of possession to a receiver by a decree of a court of competent jurisdiction. Whether this be so or not, we are not called upon to decide, because it has never been held that the company is relieved from liability unless the possession of the receiver is exclusive, and the servants of the road wholly employed and controlled by him. In this case the possession was not exclusive, nor were the servants subject to the receiver's order alone. On the contrary, the road was run on the joint account of the lessees and the receiver, and the servants employed and controlled by them jointly. Both were, therefore, alike responsible for the act complained of, and if so, the original company is also responsible, for the servants under such an employment, in legal contemplation, are as much the servants of the company as of the lessees and receiver."

Nor is it apparent that, in the present case, it is at all important to the receiver or to the company whether the one or the other was made nominal defendant. Upon the theory of the plaintiffs' case that there was a joint liability on the part of the companies defendant for losses incurred in the management of the road, it would seem to make no difference whether the share or proportion of the loss chargeable to the Alexandria and Washington railroad is deducted by the common treasurer from the share of the net earnings coming to the receiver, as is now the case, or should be deducted by the latter as part of his expenses, as would have been the case if he, as receiver, had been sued, instead of the company.

A special plea was likewise filed by the Alexandria and Fredericksburg Railway Company, claiming immunity, because their railroad was, at the time of the collision, in the possession and control of trustees.

Under this plea it was shown that the company, on June 1, 1886, executed a deed of trust to secure payment of the principal and interest of bonds to the amount of one million of

dollars, and that DuBarry and Green were trustees, under the provisions of said deed and of certain orders of the county court of Alexandria County, in the State of Virginia. There was also evidence given tending to show that the said trustees took possession of said road on December 6, 1872, and all of its property, and held, used, and operated the same up to and beyond the time of the said collision, and that, at the time of said collision, the said Alexandria and Fredericksburg Railway Company had in its possession no cars, engines, or rolling stock, and that the trustees in possession under said deed of trust, as aforesaid, did, in January, 1875, appoint George C. Wilkins superintendent of said Alexandria and Fredericksburg railway and property, and that said Wilkins had exclusive possession and management of the road.

On the part of the plaintiffs it was shown that the Alexandria and Fredericksburg Railway Company made a report to the board of public works of the State of Virginia for the year of 1885, sworn to by the president and general superintendent of the company, in which there is no reference to the alleged possession by trustees, but it does contain detailed statements of the property of the company, including cars and engines, and of the number of passengers and tons of freight carried, and of the various expenditures on account of repairs.

It was further shown that the engine that hauled the freight train that figured in the collision belonged to the Alexandria and Fredericksburg Railway Company.

The Alexandria and Fredericksburg Railway Company requested the court to charge the jury that if they should find that the property of the company was in the exclusive possession and control of the trustees, and that the company did not, by its servants, agents, or otherwise, exercise any authority or control over the road between St. Asaph's Junction and Alexandria, after the receiver of the Alexandria and Washington Railroad Company took possession of that line, the verdict must be for the Alexandria and Fredericksburg Railway Company.

The court instructed the jury as follows:

"The Alexandria and Fredericksburg Railway Company also pleads that it was not a common carrier on the road when the accident occurred, in addition to the plea of not guilty, and upon this trial it supports this plea by showing that its road, at the time of the accident and for some time before, had been in the possession of trustees, by virtue of the provisions of a deed of trust executed by the company to secure its indebtedness, the condition of which had been broken by the maturity and non-payment of the debt so secured.

"In order that the Alexandria and Fredericksburg Company be acquitted from responsibility for this reason, it should, in any event, appear that, in fact, the business of management and operation of the road was conducted by the trustees to the entire exclusion of the company, its officers, and board of directors, and that this was so notoriously so that the fact may well be presumed to be known to the public. Besides, it should appear that the trustees were not appointed by the procuration or assent of the railroad company, for, if so, the trustees would be as much the agents of the company as of the grantees in the trust deed. The Supreme Court of Appeals of the State of Virginia, in an action brought against the Alexandria and Fredericksburg Railway Company for personal injuries resulting from negligence on the road while in the possession of trustees by virtue of a deed of trust, under conditions precisely similar to those shown in this case, held that 'no provision is found in the charter of the defendant company, or the general railroad law of Virginia, which will authorize the company to transfer to trustees or to mortgagees, under the deed of trust given as a mere incumbrance and security, the right and legal capacity to step into the shoes of the company, and assume and exercise indefinitely the franchises, rights, and privileges of the company, so as to give the company exemption and immunity from responsibility for all injuries inflicted by the operation of the road by trustees.' I quote this language for convenience and accuracy, and adopt it, and give it to you as the law in this case. It follows that the Alexandria and

Fredericksburg Company cannot be excused from liability because of any possession shown in trustees."

An examination of the trust deed discloses a provision that the trustees, in case of default for a period of ninety days, and on the request in writing of the holders of the bonds, might take possession of the railroad and appoint agents to conduct its affairs; and it was claimed that the court might presume that the possession of the trustees, relied on to defeat the suit against the company, was in pursuance of that provision.

However this may be, we think that there was evidence which justified the court in submitting the question of the exclusive possession by the trustees to the jury, and that the instructions given were not erroneous in any substantial particular. The observations already made respecting the similar claim on behalf of the receiver of the Alexandria and Washington Railroad Company are applicable here, but need not be repeated.

*Judgment of the general term of the Supreme Court of the District of Columbia reversed, and case remanded to that court with directions to set aside the judgment of the special term, and to permit the plaintiffs to elect to become nonsuit as against the Pennsylvania Railroad Company, and take judgment on the verdict against the other defendants, and, if they do not so elect, then to set aside the verdict and order a new trial generally.*