BROWN v. SOUTHERN PAC. CO. et al.

No. 1729.   Decided December 14, 1906 (88 Pac. 7).

RAILROADS — OPERATION — PERSONAL INJURIES — COMPANIES LIABLE. Where plaintiff brought action jointly against three railroad companies for personal injuries received at a depot, and showed negligence on the part of those operating the train, which was made up of cars belonging to one company, propelled by an engine of another, by a crew paid by the third, and showed that the depot was maintained for the common benefit of the defendants, between whom some sort of agreement existed, he had made a prima facie case of joint liability without showing just what were the contract relations of defendants.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by William Brown against the Southern Pacific Company and others. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

*P. L. Williams* and *C. S. Varian* for appellants.

*A. G. Horn* for respondent.

## APPELLANTS' POINTS.

To apply the general rule, as affecting the liability, joint and several, of tortfeasors because of their union in act, there must be some community in the wrong doing; the injury must be in some sense the result of joint work. It is not enough that the plaintiff has, on certain grounds, a cause of action against one, and on entirely different grounds, a cause of action for the same physical tort against another. The plaintiff may have a cause of action against each other, but it does not follow that he can sue and recover against both jointly. (*Blaisdel v. Stephens*, 14 Nev. 17; Pomeroy's Remedies and Remedial Rights, 307, 308, 309; *Butler v. Ashworth*, 110 Col. 614, 43 Pac. 386; *Trowbridge v. Forepaugh*, 14 Minn. 133; *Long v. Swindle*, 77 N. C.; *Miller v. Highland Ditch Co.*, 87 Cal. 430.)

## RESPONDENT'S POINTS.

The depot company owned and controlled the crossing in question and if it permitted others to use this crossing it is just as liable as if it had actually committed the injury. It owed a duty to the traveling public to see that its tracks were so used as to avoid injury to anyone and in failing to do so it became liable. The railroad companies who were operating the train owed the same duty. All defendants therefore committed a breach of duty to the plaintiff which resulted in his injury and in such case the rule is absolute that they are joint tortfeasors and that any or all may be sued and a recovery had against all. (Cooley on Torts, 145; 16 A. & E. Encyc. of Law, 471-473; 15 Encyc. Pl. & Pr., 557-559 and cases; 1 Jag. on Torts, 209; 2 Thomp. on Neg., 1088, sec. 5; *Vary v. Railroad*, 42 Iowa 246; *Tompkins v. Railroad*, 65 Cal. 163; *Colegrove v. Railroad*, 75 A. D. 418 [N. Y.] and cases; *Lyman v. Hampshire*, 140 Mass. 311; *Union Co. v. Shacklett*, 119 Ill. 232; *Boyd v. Watt*, 27 Oh. St. 268; *Nav. Co. v. Richards*, 57 Pa. St. 148; *City v. Slangstrom*, 36 Pac. 706; *Slater v. Meseream*, 64 N. 7147; *Transfer Co. v. Kelly*, 36 Ohio St. 92; *Chapman v. Palmer*, 77 N. 754.)

McCARTY, C. J.

Plaintiff brought this action against the defendants jointly to recover damages for personal injuries suffered through an accident at a railroad crossing alleged to have resulted because of the joint negligence of the defendants. The paragraph of the complaint charging negligence is as follows: "That on the 7th day of December, 1905, at said Ogden city, Utah, and whilst the said plaintiff was crossing the railroad track controlled by the defendants upon a public street, highway, and thoroughfare, at a point where there was and is frequent and much travel, and in a populous part of said city, and by reason of the carelessness and negligence of the defendants in operating, managing, running, and switching their engines and cars over, across, and upon said street, highway, and thoroughfare, and by reason of their negligence in failing to adopt or use any precaution to prevent injuries thereon and in failing to have stationed any flagman or other person, or any guard or gates to give warning or protection from injuries to the traveling public or to persons having occasion to travel along said public street and over and across said railroad track, and by failing to sound the whistle or ring the bell as required by law, all of which was then and there necessary to prevent injury to persons crossing the highway aforesaid, and without giving any notice or warning whatever, and by reason of the carelessness and inefficiency in the management, handling, running, and switching of the trains, cars, and engines, and whilst the plaintiff was traveling and passing over the said railroad tracks of the defendants on the road crossing aforesaid, the defendants carelessly ran and backed its cars and engines upon and over the plaintiff and the vehicle in which he was then and there riding," thereby injuring him to his damage, etc. Each defendant filed its separate answer and admitted: "(1) It is and was at the times mentioned in said complaint . . . engaged in the business of maintaining and operating a railroad, together with tracks, engines and cars in the city of Ogden and elsewhere; . . . "and (2) alleged that "at the time and place of the accident referred to in said complaint . . . [it] was

not operating, managing, running or switching any of its engines or cars 'across or upon the said street or thoroughfare as alleged in said complaint, or at all." A trial by jury was had, and at the close of plaintiff's case the defendants, other than the Oregon Short Line, severally moved for a judgment of nonsuit, on the grounds that neither company was operating or controlling the movements of the train with which plaintiff collided at the time he was injured. The motions were overruled, and the case finally submitted to the jury, who returned a verdict for plaintiff and against all of the defendants jointly for general and special damages in the sum of $2,500, which the court reduced to $2,069. Judgment on the verdict as rendered by the court was entered against all of the defendants jointly, who have severally appealed to this court.

It is conceded that "evidence was given and received on behalf of plaintiff tending to support the allegations of negligence in the matter of the operation and running of the train, made on his part." And, as stated by counsel for appellants in their brief, "the errors assigned upon this appeal are directed to the question of the joint liability of the defendants as charged in the complaint and affirmed by the verdict and judgment." The facts relating to the operation and control of the train of cars in question, as disclosed by the record, are as follows: Three of the defendants, namely the Southern Pacific, Union Pacific, and Oregon Short Line Railway Companies, jointly used the same depot at Ogden City, Utah, which was provided by the other defendant, the Ogden Union Railway Depot Company. They jointly used the same baggage room and were jointly furnished other depot facilities in general. There were five tracks provided by the depot company for passenger trains, which tracks were immediately in front of the depot buildings and were used by the railway companies mentioned in connection with the other depot facilities provided by the depot company. All of these tracks intersected and crossed Twenty-fourth street, on which plaintiff was traveling at the time he received the injuries complained of. Men known as "depot police" were

31 Utah—21

employed by the depot company and were paid for their services by the Union Pacific Company. The duties of the depot police were to direct passengers what trains to take and to make reports of trains coming into, and going out from this depot or station. The depot yards, railroad tracks, etc., were in charge of a yardmaster, who was employed by the Oregon Short Line Company and paid by the Union Pacific Company. The duties of the yardmaster were to designate which track or tracks the incoming trains of the different railway companies referred to should occupy and the different points at which they were to stop, and to direct the making up of passenger trains and designate points from which the outgoing trains should start. He had charge of the switching in the yards and directed what engine or engines were to be used on each particular occasion for that purpose. The flagmen were under him and subject to his orders. In fact, the evidence tends to show that he had general supervision over the depot grounds and represented each of the defendants in the operation of their trains within the depot yards. William L. Scott, who was yardmaster at the time of the accident, was called as a witness and testified in part as follows: "Q. Does the Oregon Short Line do all the switching for all three companies? A. Yes, sir. Q. It is a joint yard of the three companies? A. Yes, sir. . . . Q. And in the switching do they [referring to the O. S. L. Company] use the engines of the other roads. A. Yes, sir; we have got S. P. engines, Short Line engines, and U. P. engines. . . . Q. Mr. Scott, isn't it true that all three of these companies are jointly handling their business in this yard regardless of one company or the other, and take whatever crew they can find, and the whole thing is a joint affair? A. It is a joint affair; yes, sir. Q. It is true that those three companies, for some purpose, jointly operate this yard down there? A. Yes, sir. Q. You are supposed to be working for the Short Line, not for the Southern Pacific? A. Yes; they are not kept separate. It is all in one yard. Everything done together. Q. Yes, everything done together there, and all three companies have one head? A. Yes, sir."

It is, in effect, conceded by counsel for appellants that business relations of some kind existed between the defendants respecting the control and management of their trains within the depot grounds. In their brief they say: "It may be supposed that there were business relations existing between these companies. . . . But what were these business relations?" Then they proceed to argue that, because plaintiff failed to prove just what these contractual relations were, he cannot recover, and that the court erred in denying the motions for a nonsuit. In support of this contention counsel cite and rely upon the case of the *Pennsylvania Railroad Co. v. Jones,* 155 U. S. 340, 15 Sup. Ct. 136, 39 L. Ed. 176. The action in that case was for personal injuries and was brought jointly against five railroad companies and judgment was entered jointly against four of them, namely, the Pennsylvania, the Baltimore & Potomac, Alexandria & Fredericksburg, and Alexandria & Washington Companies. On appeal to the Supreme Court of the United States the judgment was reversed as to the Pennsylvania Railroad Company, but affirmed as to the other defendants. By an examination of the opinion in that case it will be seen that the several railroads mentioned maintained a continuous line of track, different sections of which were owned by the several companies. The track where the accident occurred was owned by the Alexandria & Washington Company. In the course of the opinion the court says:

"It is conceded, or sufficiently appears from the evidence, that the running and management of the road of the Alexandria & Washington Railroad Company were not within the scope of the ordinary powers of the Pennsylvania Railroad Company as a corporation of the state of Pennsylvania. To render the latter company responsible for what might take place on a railroad in another state some contract or arrangement to that effect must be made to appear. It is also disclosed by the evidence that neither of the trains by whose management the accident was caused was a train belonging to the Pennsylvania Railroad Company, and that the men in charge were not in the immediate employment of that company. . . . That the Pennsylvania Railroad Company advertised that it ran trains or connected with trains of other companies, so as to form through lines without breaking bulk or transferring passengers, did not tend to show any contract or agreement be-

tween the companies to share profits and losses.". It must be conceded that the facts in that case, by which it was sought to connect the Pennsylvania Railroad Company with the accident and thereby hold it as a joint tortfeasor with the other companies mentioned, are not at all similar to the facts in this case. In that case no community of interest in the road where the accident occurred nor in the management or control of the trains which collided and caused the injuries to the plaintiff therein was shown to exist between the Pennsylvania and other railroad companies."

Whereas, in the case under consideration, the undisputed evidence shows that the depot where plaintiff received his injuries was managed and controlled for the common use of the defendants. In fact, each of them in its answer, in referring to the railroad tracks where the accident occurred, admits "that it is and was at the times mentioned in the complaint . . . engaged in the business of maintaining and operating a railroad, together with engines and cars." This pleading cannot be construed other than as an admission that each of the defendants were "maintaining and operating a railroad together with tracks, engines, and cars" within the depot yards referred to. And we think there is abundant evidence in the record to support a finding by the jury that the depot was managed and controlled for the common benefit of all the defendants.

The train with which plaintiff collided was composed or made up of an engine owned by the Union Pacific Company attached to cars which belonged to the Southern Pacific Company, and was operated by a crew employed by the Oregon Short Line Company, and who were paid by the Union Pacific Company. It will thus be seen that there was a community of interest between the several defendants with respect to maintaining the tracks in the depot yards, and in the management of the trains of the different roads from the time they entered the depot until they departed therefrom, and specially was this so with respect to the handling and operating switch engines within the yards and the cars that were sidetracked and temporarily left at the station to be cleaned, or for other purposes. The facts in the case are, in some respects, similar to those in the case of the *Pennsylvania*

*Railroad Co. v. Jones,* supra, on which the court upheld the
joint judgment entered against three of the defendants
therein. In that case it is said:

"There was evidence from which the jury might properly infer that
the railroad between the cities of Alexandria and Washington was man-
aged and controlled for the common use of the Baltimore & Potomac
Railroad Company, . . the Alexandria & Washington Railroad Com-
pany, . . . and the Alexandria & Fredericksburg Railway Company;
the gross earnings of these companies derived from this line between
Alexandria and Washington, including what the Virginia Midland Rail-
way Company paid for the privilege of running its trains over these
tracks and what was received for transportation of mails, went into the
hands of a common treasurer, and were by him, after payment of oper-
ating expenses, divided among the three companies according to some
rule not very definitely shown, but apparently in proportion to the miles
of track of each road; that the operating and accounting officers of the
three companies were the same; that the freight train in question was,
at the time of the collision, on that portion of the road which belonged
to the Alexandria & Washington Railroad Company; that the engineer
and fireman were employees of the Baltimore & Potomac Railroad Com-
pany; that the engine was that of the Alexandria & Fredericksburg
Railway Company; and that the passenger train was in charge of a
pilot employed and paid by the three companies. . . . Such a state
of facts would, we think, warrant a finding of joint liability of these
three companies to the plaintiffs."

True, in the case at bar it was not shown what proportion
of the expenses incurred in the maintenance of the depot
yard, tracks, etc., or of the cost of the switching done therein,
was paid by each of the respective companies. But plain-
tiff was not bound to do this in order to entitle him to recover
against them jointly. It being conceded that there was suffi-
cient evidence to support a finding of negligence on the part
of those who were operating the engine and train with which
plaintiff collided, all that was necessary for plaintiff to do,
in order to make out a prima facie case of joint liability, was
to introduce evidence from which the jury would be author-
ized in finding that the depot was maintained for the com-
mon use of the defendants, and that they all co-operated or
were pecuniarily interested in putting in motion the agency
that caused the injury. And, as hereinbefore stated, we think
that there is abundant evidence in the record to support such

a finding. (1 Shear. & Redf. Neg. 122; 15 Enc. Pl. & Pr. 557, and cases cited.)

The judgment is affirmed, with costs.

STRAUP and FRICK, JJ., concur.