WELCH LUMBER CO. v. NORFOLK & W. RY. CO.

(Supreme Court, Appellate Division, First Department.    March 11, 1910.)

1. CONSTITUTIONAL LAW (§ 89*)—PERSONAL, CIVIL, AND POLITICAL RIGHTS—
   LIBERTY TO CONTRACT—CARRIERS.

   Interstate Commerce Act, § 20, as amended by Act June 29, 1906, c. 3591, § 7, 34 U. S. Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1166), making the initial carrier liable to the shipper for loss of or injury to interstate shipments, regardless of whether the loss or injury occurs on its line or not, and providing that it cannot exempt itself from this liability by contract, receipt, rule, or regulation, and that the initial carrier may recover from the carrier on whose line the loss or injury occurred the amount it is required to pay the owner of the property, is not unconstitutional as an unwarranted interference with the freedom of contract.

   [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 89.*]

2. CONSTITUTIONAL LAW (§ 297*)—DUE PROCESS OF LAW—DEPRIVATION OF
   LIBERTY TO CONTRACT.

   A contention that this act authorizes taking of property without due process of law really depends upon the contention that it is an unwarranted interference with the freedom of contract, and as it merely regulates the liability of the carrier, and prevents it from exempting itself from this liability by contract, the question of due process of law is not involved.

   [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 297.*]

3. COMMERCE (§ 3*)—REGULATION—CONSTITUTION—CONSTRUCTION.

   The constitutional grant of power to Congress to regulate interstate commerce is to be liberally construed.

   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 3;  Dec. Dig. § 3.*]

Appeal from Appellate Term.

Action by Welch Lumber Company against the Norfolk & Western Railway Company.   From an order adverse to defendant, it appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, McLAUGHLIN, MILLER, and DOWLING, JJ.

Arthur H. Masten, for appellant.

Harry D. Nims, for respondent.

MILLER, J.   The appellant contests the validity of an act of Congress, to wit, section 20 of the interstate commerce act, as amended June 29, 1906 (34 Stat. p. 593, c. 3591, § 7 [U. S. Comp. St. Supp. 1909, p. 1166]), on the ground that it interferes with liberty of contract and authorizes the taking of property without due process of law.   Said section is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed:   Provided, that nothing in this section shall deprive any holder of such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

It has long been the settled rule in the federal and in most of the state courts that, in the absence of special contract, a common carrier, receiving goods marked for shipment to a point beyond its own line, is not liable for anything occurring after the delivery of the goods to the next connecting carrier. See Pennsylvania R. R. Co. v. Jones, 155 U. S. 333, 15 Sup. Ct. 136, 39 L. Ed. 176; Michigan Central v. Myrick, 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325. The rule in England, and in some of the states, is that the mere receipt of goods marked for shipment to a point beyond the line of the receiving carrier operates as a contract to carry to the point of destination, and that, in the absence of special contract varying the rule, the initial carrier is solely liable to the shipper for whatever occurs at any point of the entire route. See Bristol & Exeter R. R. Co. v. Collins, 7 House of Lords Cases, 194. No doubt, it would be competent for Congress to change the common law as declared by the courts as to interstate commerce, and to adopt the so-called English rule. Under that rule, however, the carrier could by special contract restrict its liability. The federal courts, differing with the courts of this state, have held that a contract of a common carrier, exempting itself from liability for its own or its servant's negligence, is void as against public policy. N. Y. C. R. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627. If the courts, upon grounds of public policy, can limit the right of the carrier to contract for an exemption from liability, a fortiori the Congress may do so.

It may be said that a carrier is not obliged to contract to carry beyond its own line, that the statute does not prohibit it from contracting for an exemption from liability, but commands it to contract for an extension of liability. Theoretically that is unjust, and in the case of ordinary individuals, not engaged in the discharge of quasi public functions, could not legally be justified; but in the case of transportation companies the difficulty is theoretical only, and it would appear to be less if the English rule had first been adopted—if the Congress had taken two steps, instead of one, to accomplish its purpose. Practically, the statute will result in no hardship to the carriers and will prevent injustice to shippers. The carriers will have no difficulty in fixing responsibility for, and in adjusting among themselves losses occasioned by, loss, damage, or injury to property transported by them; whereas, if the shipper had to follow the goods, so as to fix the responsibility for any loss, damage, or injury, he would usually be remediless. Plainly the statute rests upon a reasonable basis.

While liberty to contract is included within the words "liberty and property" in the Constitution as broadly interpreted by the courts, that does not mean an unrestrained liberty. Addyston Pipe & Steel

Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Patterson v. The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002. It is unnecessary to cite the numerous instances of valid legislative acts, passed in the exercise of the police power, restricting freedom of contract. The contention that the act authorizes a taking of property without due process of law really depends upon the contention that it is an unwarranted interference with the freedom of contract. The act merely regulates the liability of the carrier, and prevents it from exempting itself from liability by contract. The question of due process is not involved.

The statute is plainly within the express power of the Congress to regulate interstate commerce, granted by the federal Constitution. It is now settled that that grant of power is to be broadly construed. Howard v. Illinois Central R. R. Co., 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. If an act, regulating the relation of employer to employés, is within the power to regulate commerce, an act regulating the liability of carrier to shipper certainly is. The appellant relies upon the case of Adair v. U. S., 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436; but there is no analogy between the statute in question here and an act making it a criminal offense to discharge an employé from the service of a carrier because of his membership in a labor organization.

The determination of the Appellate Term is affirmed, with costs. All concur.