# TYLER

*v.*

# THE PENNSYLVANIA RAILROAD COMPANY.

RAILROADS; CONTRACTS FOR CARRIAGE.

In an action against the Pennsylvania Railroad Company for breach of a special contract for carriage, where it appeared that the plaintiff purchased, at Washington, D. C., from the Baltimore & Potomac Railroad Company, a round trip special excursion ticket to Atlantic City, N. J., entitling him to carriage on that railroad to and from Camden, N. J., and on the Camden & Atlantic Railroad from Camden to Atlantic City and return, which ticket was refused on the Camden & Atlantic Railroad on plaintiff's return from Atlantic City, it was *held,* upon the plaintiff's evidence, consisting of newspaper advertisements published in Washington prior to the purchase by plaintiff of his ticket, that special excursions would be run to Atlantic City by the Pennsylvania Railroad Company; proof that the general passenger agent of the defendant was also the general passenger agent of the two other roads; schedules of through trains between Washington and Atlantic City, published in a traveler's guide, in which the Baltimore & Potomac and Camden & Atlantic Railroads were embraced under the heading "Pennsylvania Railroad system;" extracts from an annual report of the directors of the Pennsylvania Railroad Company showing that the two roads mentioned belonged to the Pennsylvania Railroad system, and proof that the officials who arrested plaintiff at Camden for

failure to pay his fare wore buttons on their uniforms containing the letters " P. RR."— was insufficient to so connect the defendant with the other railroads as to render it liable to the plaintiff.

No. 1029. Submitted January 18, 1901. Decided March 7, 1901.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the court in an action to recover damages for breach of a contract of carriage. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Franklin H. Mackey* and *Mr. Holmes Conrad* for the appellant:

1. The question here is, not whether the evidence offered by the plaintiff in support of the issues on his part was of sufficient weight to justify or compel a verdict in his favor, but whether the evidence offered by him was of " such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it." *Phœnix Ins. Co.* v. *Doster,* 106 U. S. 32. See, also, 9 App. D. C. 26; *Sparf and Hansen* v. *United States,* 156 U. S. 99; *Randall* v. *Balto. & Ohio RR. Co.,* 109 U. S. 482.

Whatever might be said as to the weight of this evidence, whether or not it was sufficient to justify a jury in believing it and attaching to it the weight necessary to a verdict, it cannot be denied that if the facts which it tended to prove were, in the opinion of the jury, well proven, the evidence would, as matter of law, support the verdict.

Stripped of all technical and merely formal phrase, the plaintiff's case, as he presents it, is that while traveling from Atlantic City to Washington he was assaulted by the servants of the defendant, and suffered injuries for which he here claims damages; that the servants of defendant, when they committed this assault, were acting within the scope of the authority conferred upon them for the discharge of the duties confided to them; that whether they were servants in

the permanent or the temporary and occasional employ of the defendant is a matter of indifference so far as defendant's liability is concerned; that the defendant had undertaken by express contract to carry plaintiff from Washington city to Atlantic City and return, and to protect and shield him from such assaults as were inflicted upon him.

2. The relation between the plaintiff and the defendant was that of passenger and common carrier. The advertisements, making the proposition to the public to carry them on excursions to Atlantic City and return, were inserted in the newspaper by the Pennsylvania Railroad Company, through its agents, and were paid for by that company. The offer so made by the defendant company was accepted by the plaintiff, and thus the contract between these parties was closed. See *Denton* v. *Great Northern Railroad*, 5 Ellis & Blackburn, 860; S. C., 85 Eng. C. L. Rep. 860; *Sears* v. *Eastern Railroad*, 14 Allen, 433. The ticket does not contain all the contract, the rest of it is in what the railroad company advertises. *Gordorn* v. *RR. Co.*, 52 N. H. 596–599; *Quinby* v. *Vanderbilt*, 17 N. Y. 306; *Rawson* v. *Penn. RR. Co.*, 48 N. Y. 217; Wood on Railroads, Vol. 2, Sec. 312.

The ticket issued to the plaintiff at the Baltimore & Potomac station does not on its face purport to have been issued by the Pennsylvania Railroad Company, but by the Baltimore & Potomac Railroad Company. It was marked "Special Excursion Ticket," and provided on its face for a continuous passage from Washington to Atlantic City and return.

This ticket carried the plaintiff over the lines of the Baltimore & Potomac Railroad Company, the Philadelphia, Wilmington & Baltimore Railroad Company, and the Camden & Atlantic Railroad Company, and yet there are no coupons attached to it for the two latter roads, but it is a solid ticket, carrying the passenger from Washington city to Atlantic City over all three roads.

It purports to grant " a continuous passage " between the two terminal points of Washington and Atlantic City.

This the Baltimore & Potomac Company could not do, and

did not undertake to do. The advertisement making the offer, which the plaintiff here accepted, stated that—

" On Friday, the 10th inst., the *Pennsylvania Railroad Company will run* a select excursion to Cape May and Atlantic City at the very low rate of $5.00 for the round trip."

It was the defendant, then, that " held itself out " to the public as the responsible conductor and author of this excursion. See *Chesapeake & Ohio RR. Co.* v. *Howard,* 178 U. S. 161.

The Thirty-ninth Annual Report of the Board of Directors of the Pennsylvania Railroad Company to the stockholders, presented at a meeting held March 9, 1886, discloses the " physical and financial condition of the lines embraced in your system," and states to the stockholders that—

" The statements immediately following show the results on the three divisions *operated by the company* east of Pittsburg and Erie, viz. :

" 1st. The Pennsylvania Railroad division.

" 2d. *The United Railroads of New Jersey division,* &c.

" 3d. The Philadelphia and Erie Railroad division."

So it appears from this report that not only financially, but physically, the Pennsylvania Company was actually *operating* the United Railroads of New Jersey, of which, it appears, the Camden & Atlantic was a part.

Further, Mr. James R. Wood, a very reluctant and unwilling witness for the plaintiffs, was called by them and proved that he was at the period referred to and still was the general passenger agent of the Pennsylvania Company. He was asked the question : " Were not the roads in here operated by the Pennsylvania Railroad ? Answer, Yes."

He was shown copies of "Appleton's National Railway and Steam Navigation Guide " and " Travellers' Official Guide of the Railway and Steam Navigation Lines in the United States and Canada," wherein the Pennsylvania Company appears to be operating the lines between Washington and Atlantic City, and the witness proved that he had furnished the information contained in those publications as to the Pennsylvania Company.

The case of *Penn. RR. Co.* v. *Jones,* 155 U. S. 333, differed from this in at least two essential features. Here *there was* an " attempt to show a contract or agreement between the plaintiff and the Pennsylvania Railroad Company," and, we think, an attempt that was altogether successful, so far as the sufficiency of the proof went, and here, too, there was no effort to show that the Pennsylvania Company merely " controlled " the other companies by holding a majority of their capital stock, but there was direct and unimpeachable evidence offered to show that the Pennsylvania Company actually *operated* the line of the Camden & Atlantic Company. But it was not necessary to show that the Pennsylvania Company had *permanent* or complete control over the Camden & Atlantic, but only that on this particular occasion did it operate that train. See *Howard* v. *The Chesapeake & Ohio Co., supra,* 166.

3. The relation of carrier and passenger cast upon the carrier the burden of protecting the passenger from the assaults of his servants, and the carrier was negligent in the duty imposed, and so is liable. See *Steamboat Company* v. *Brockett,* 121 U. S. 625 ; Cooley on Torts, 645.

4. Even though the plaintiff had not been a passenger, yet the defendant would be liable under the facts.

We assume the relation of carrier and passenger to have been established by the proofs offered in the trial below and here in the record, but suppose that such relation did not exist, but that plaintiff was a stranger on the premises of the defendant, but about his lawful business, and the assault here complained of was inflicted by officers, yet would the right of recovery be none the less clear and direct. Cooley on Torts, 538.

These officers proved to have had on the uniform of the Pennsylvania Railroad Company.

*Mr. Frederic D. McKenney* and *Mr. J. S. Flannery* (*Mr. Wayne MacVeagh* being with them on the brief) for the appellee:

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This action was instituted on the 20th day of November, 1885, and why it was so long pending before trial, which took place in June, 1900, does not appear. The action was brought by the appellant, Richard W. Tyler, against the appellee, the Pennsylvania Railroad Company, for personal wrongs and injuries committed against the plaintiff while a passenger on the Camden & Atlantic Railroad, running between the city of Camden and Atlantic City, in the State of New Jersey, and alleged to have been operated and controlled by the Pennsylvania Railroad Company. The declaration has been the subject of various amendments, the last amendment that was made was made and filed on November 1, 1899, upon which the trial was had.

This amended declaration contains two counts. By the first of these it is alleged that the plaintiff sues the defendant, a corporation doing business in the District of Columbia, and which was and is operating a number or system of railroads, among others the railroad commonly known as the Baltimore & Potomac Railroad, running between the city of Washington, in the District of Columbia, and the city of Baltimore, in the State of Maryland; also the railroad commonly known as the Philadelphia, Wilmington & Baltimore Railroad, running between the city of Baltimore and the city of Philadelphia, in the State of Pennsylvania.; and also the railroad commonly known as the Camden & Atlantic Railroad, running between the cities of Camden and Atlantic City, in the State of New Jersey, and carrying on by its servants and agents the business of common carrier of passengers for hire over said roads, from the city of Washington to said Atlantic City; and the defendant being such common carrier of passengers, by notice and advertisement to that effect, published in the city of Washington, District of Columbia, offered to carry any person from the said city of Washington to said Atlantic City and thence back again, for and in consideration of the sum of $5 for each person,

to be paid to the defendant in that behalf; and in response to and in accordance with said offer the plaintiff paid to the defendant or its duly authorized agent the said sum of $5, and received from the defendant or its agent a certain railroad ticket, commonly called a special excursion or round trip ticket, as evidence of the payment of the price and of the right of the plaintiff to be carried by the defendant or its agents from the city of Washington to Atlantic City and return. That thereupon the plaintiff on the 21st day of August, 1885, at the city of Washington, did embark and was by the defendant or its agents received upon a certain train of cars for the carrying of passengers, operated by the defendant or its agents, between the city of Washington and the city of Philadelphia, and was carried thereon to the last-named city, and thence was further carried by the defendant or its agents, by way of ferry-boat, across the Delaware river, to said city of Camden, and from thence was further carried by the defendant or its agents, by certain other train of cars, operated by the defendant or its agents, to said Atlantic City. The plaintiff further alleges, that on the 24th day of August, 1885, he being then in Atlantic City and desiring to avail himself of the said return trip ticket, and to return by the aforesaid route to the city of Washington, as by the defendant's contract and agreement he was lawfully entitled to do, by tendering to the defendant or its proper agents the said round trip ticket, embarked at said Atlantic City upon one of the return trains of the Camden & Atlantic Railroad aforesaid, operated by the defendant or its agents, and upon which he was lawfully entitled to ride, as aforesaid; and being upon said train and having been carried a part of the way, one of the agents of the defendant, then acting as conductor of the train, was tendered by the plaintiff the said return ticket, but the conductor refused to accept the same, and demanded of the plaintiff railroad fare from said Atlantic City to Camden, which the plaintiff refused to pay. Thereupon the conductor loudly threatened, before a large crowd of passengers, to eject the plaintiff from said train; and thereafter, upon the arrival of the train at

Camden, he was subjected to arrest, etc., and other maltreat-
ment and indignity, to the great mortification and injury of
the plaintiff, etc.

2. By the second count it is alleged, that the defendant,
being a corporation doing business in the city of Washing-
ton, was, on or about the 21st day of August, 1885, and for
some time previous thereto, engaged in running of excur-
sions by railway to Atlantic City, in the State of New Jer-
sey, from the city of Washington, in the District of Colum-
bia, and did, on or about the date mentioned, by notice and
advertisement to that effect, publish in the city of Washing-
ton, an offer to carry any person from the city of Washing-
ton to Atlantic City and thence back again for the sum of five
dollars for each person, to be paid to the defendant in that
behalf; and in response to and acceptance of said offer of the
defendant, the plaintiff paid to the defendant, or its duly au-
thorized agent, the sum of five dollars, and received from
the defendant or its agent a certain railroad ticket, com-
monly called a special excursion or round trip ticket, as evi-
dence of the payment of the price and of the right of the
plaintiff to be carried by the defendant or its agents from
the city of Washington to Atlantic City and return. That
thereupon the plaintiff, on the 21st of August, 1885, at the
city of Washington, did embark and was by the defendant
or its agents received upon a certain train of cars for carry-
ing of passengers, operated by the defendant or its agents,
running, etc. Then follow or are repeated the same allega-
tions contained in the first count, the only difference being
that in this second count the name of the Camden & Atlan-
tic Railroad is omitted, and the general allegation made
that the plaintiff was carried by a certain train of cars oper-
ated by the defendant or its agents; and so in the return
from Atlantic City.

The defendant pleaded to the amended declaration, (1)
That it was not guilty as alleged; (2) That it was not, on the
21st and 24th days of August, 1885, and never has been, en-
gaged in operating the Baltimore & Potomac Railroad,
Philadelphia, Wilmington & Baltimore Railroad, or the

Camden & Atlantic Railroad, or any one of them, as in and by the first count of the amended declaration is alleged; (3) That it was not, on the 21st and 24th days of August, 1885, and never has been, engaged in the business of common carrier of passengers from the city of Washington, in the District of Columbia, to Atlantic City, in the State of New Jersey, as in said amended declaration is alleged; (4) That it never was engaged in running excursions by railroad to Atlantic City, in the State of New Jersey, from the city of Washington, District of Columbia, as in said amended declaration is alleged. Issue was joined on these pleas.

As appears by the allegations of the declaration, the action is upon a special contract for carriage, and the onus of proof is upon the plaintiff to show that the defendant entered into such contract and became bound thereby. If the alleged contract was one made by another separate and distinct railroad corporation, engaging with the plaintiff for safe carriage from the city of Washington to Atlantic City and return, over several roads, not operated and controlled by the defendant, then, clearly, there is no ground for maintaining this action against the defendant. But if, on the other hand, the contract for carriage was really and in fact made by and with the defendant company, engaging to furnish passage to the plaintiff over several roads, and the wrong complained of was perpetrated on the plaintiff while being carried over one of such roads by virtue of the contract for carriage, and over which, or the particular train, the defendant had control, and operated the same, then the defendant might be shown to be liable to this action under the special contract as alleged in the declaration.

There is no pretense that there was a joint contract by the defendant and all or any of the railroad companies mentioned in the first count of the declaration, with the plaintiff; and if there was a contract of carriage by the defendant with the plaintiff, it must have been made, according to the proof, by and in the name of the Baltimore & Potomac Railroad Company, as constituting part of the defendant company, or as partner therewith. When a passenger makes a contract

for carriage or transportation with one railroad company, the carriage to extend over several roads, and he suffers wrong or injury in the journey from the servants and agents of one of the roads other than that from which he obtained his ticket, or with which he made the contract for carriage, there being a joint arrangement between the railroad companies for carrying on the common business, the first carrier will be responsible for the wrong as well as the one actually committing it. If the wrongful act complained of is the joint act of two carriers either may be answerable in an action of tort, or both may be joined, or the plaintiff may sue in contract the carrier with whom he is himself in privity, that is, with whom he made the contract. *McElroy* v. *Nashua & Lowell RR. Co.,* 4 Cush. 400; *Eaton* v. *Boston & Lowell RR. Co.,* 11 Allen, 500. If, however, the action be one on contract, as in this case, to entitle the plaintiff to recover, he must show a breach of the contract by the defendant as between the plaintiff and defendant, or otherwise the action fails. *Boylan* v. *Hot Springs RR. Co.,* 132 U. S. 146, 150.

The effort to show that the contract for carriage was made with the defendant, and that the latter is liable thereon for the wrong complained of, is made by proof of a circumstantial character.

It appears that the plaintiff, on the 21st of August, 1885, applied for and obtained at the railroad depot or office at Sixth and B streets, in the city of Washington, known as the Baltimore & Potomac Railroad depot, an excursion or round trip ticket, for which he paid $5, that being a reduced price, for passage from the city of Washington to Atlantic City and return. That ticket was given in evidence by the plaintiff, and it is necessary to examine it with some particularity, in order to determine with whom the contract was made, and what that contract, in legal effect, really was.

The ticket on its face professes to be a special excursion ticket of the Baltimore & Potomac Railroad Company. It is in two parts or coupons. The one is from Washington,

D. C., to Atlantic City, or Cape May, N. J.; and the other, or return part, is from Atlantic City or Cape May, N. J., to Washington, D. C. Both parts are signed by J. R. Wood, general passenger agent. In the part or coupon from Washington, D. C., to Atlantic City or Cape May, N. J., there is the following: "In consideration of the reduced rate at which this ticket is sold, the coupon will be received for a continuous passage only on train leaving at 11 A M., on August 21, 1885, is not good to stop off, and is void if detached."

Opposite to this, in the margin, in transverse order, is the following notice to purchasers: "Please take notice that this ticket must be stamped by agent of the West Jersey Railroad, or Camden & Atlantic Railroad agent, at Atlantic City, N. J., or the West Jersey Railroad agent at Cape May, N. J.; otherwise it will not be received for return passage; and that after it is so stamped by said agent it will be valid only for continuous return passage to starting point on date so stamped."

The second part, headed "Return Coupon," is as follows: "In consideration of the reduced rate at which this ticket is sold, it will be received for passage on any regular train, except the 'New York & Washington Express,' until August 26th, 1885, inclusive, if stamped by the West Jersey or Camden & Atlantic Railroad agent at Atlantic City, N. J., or the West Jersey Railroad agent at Cape May, N. J., and is valid only for a continuous passage on the date stamped, and is not good to stop en route." On the back of each of the coupons is indorsed: "Washington, D. C., Aug. 21, 1885, B. & P. RR."

The Baltimore & Potomac Railroad Company that issued the ticket just recited, was, and is still, a railroad corporation regularly organized and in full operation, deriving its corporate powers from the State of Maryland and the Congress of the United States; and the Camden & Atlantic Railroad Company, referred to in the ticket, is a regularly organized corporation, deriving its charter from the State of New Jersey.

Upon the ticket obtained as we have stated, the plaintiff was carried to Atlantic City; and on the 24th of August, 1885, without having the ticket stamped according to requirement, the plaintiff boarded a train of the Camden & Atlantic Railroad for the city of Camden, on his way home. When the tickets were called for by the conductor of the train, the plaintiff offered his ticket, which was refused, because it had not been stamped as required. Upon the plaintiff refusing to pay regular fare, he was, in a loud and peremptory tone, told by the conductor that he must leave the train, or he would be put off. By remonstrance, however, the matter was deferred until the train reached Camden, where the plaintiff was arrested by officers, called upon to act by the conductor, under circumstances and notoriety very mortifying and humiliating to the plaintiff, and he was taken before the superintendent of the road, by whom he was at once discharged, with the announcement that the stamping of the ticket had been, for some time before, dispensed with.

The condition on the ticket requiring the holder thereof to have it stamped by the agent of the road upon which it was intended to be used on the return passage, has been held by the Supreme Court of the United States to be a valid condition, the noncompliance with which renders the ticket void. *Mosler* v. *St. Louis Iron Mountain Railway,* 127 U. S. 390; *Boylan* v. *Hot Springs RR. Co.,* 132 U. S. 150. But here, so far at least as the Camden & Atlantic Railroad was concerned, the condition had been waived or ignored, and it may, therefore, be treated as immaterial in this case.

For the purpose of identifying the Baltimore & Potomac Railroad and the Camden & Atlantic Railroad with the Pennsylvania Railroad, and to show that the two former roads were in fact operated and controlled by the Pennsylvania Road, certain items of proof were offered. There were offered certain advertisements, published in a newspaper in the city of Washington, of special excursions to Atlantic City *via* the Pennsylvania Railroad; but published

some time prior to the 21st of August, 1885. One of these advertisements read thus: "On Friday, the 10th inst., the Pennsylvania Railroad Company will run a select excursion to Cape May and Atlantic City, at the very low rate of $5 for the round trip." But this advertisement was published some time in July, 1885. It was also shown in proof that the general passenger agent of the Pennsylvania Railroad Company was also the general passenger agent of the Baltimore & Potomac Railroad Company, and of the Camden & Atlantic Railroad Company, and had his office for those roads in the building of the Pennsylvania Railroad Company.

The plaintiff also gave in evidence certain schedules of through trains from Washington city to Atlantic City, in which the Baltimore & Potomac and Camden & Atlantic roads are embraced, published in the "Travellers' Official Guide," under the heading, "Pennsylvania Railroad System;" and also gave in evidence, for the same purpose, certain extracts from the Thirty-ninth Annual Report of the Board of Directors of the Pennsylvania Railroad Company to its stockholders for the year 1885, as showing that the two roads just mentioned were treated as belonging to the Pennsylvania Railroad System. But the report does not show that those two railroad companies were embraced in the accounting department of the Pennsylvania Railroad Company, but only as companies in which the Pennsylvania Company had large investments of stocks and bonds. It was also shown in evidence that the officers who arrested the plaintiff at Camden city 'wore buttons on their uniforms upon which were the letters "P. RR.," supposed to stand for Pennsylvania Railroad; and thus showing that that company was in control of the Pennsylvania Company.

Upon all the facts of the case, the court below, upon the request of the defendant, directed a verdict to be entered for the defendant, to which exception was taken by the plaintiff. It is difficult to perceive how the court below could have ruled otherwise than it did, with the case of the *Pennsylvania Railroad Company* v. *Jones,* 155 U. S. 333, 345,

before it. All the facts in proof in this case were in proof in that, with some additional proof that made that case stronger for the plaintiff than the present. The two cases relate to precisely the same time, and each was and is based upon substantially the same theory of liability, with the exception that the case of Jones was an action in tort for personal injuries, and the present is an action upon contract for personal wrong to the plaintiff; the one founded upon the common-law obligation of a carrier to carry safely, and the other upon an alleged special contract to carry safely. To maintain the action in either case, however, there must be shown that there was a legal duty to perform, and a breach of that duty, such as would sustain an action. And upon the same facts that are shown in proof in this case, the Supreme Court held that there was nothing in those facts that would render the Pennsylvania Railroad Company liable, as one of the defendants in the case of Jones.

The injury sued for in that case occurred on the Washington & Alexandria Railroad. The action was brought against the Pennsylvania Railroad Company and four other companies, and the theory upon which the action was founded was, that all of the defendant companies were engaged as common carriers, in the transportation of passengers, persons and freight, upon and along the several lines of the railroads belonging to them, and along the line, among others, of the Alexandria & Washington Railroad Company, under an arrangement or contract for their common benefit, by which they were interested jointly in the running and management of these roads, and that through the negligence of the defendant companies the collision occurred which caused the injury complained of.

In referring to the facts shown in evidence in that case, the court said: " It is conceded, or sufficiently appears in the evidence, that the running and management of the road of the Alexandria & Washington Railroad Company were not within the scope of the ordinary powers of the Pennsylvania Railroad Company as a corporation of the State of Pennsylvania. To render the latter company responsible for what

might take place on a railroad in another State some contract or arrangement to that effect must be made to appear."

After referring to the annual reports of the board of directors of the Pennsylvania Railroad Company to their stockholders, for 1884 and 1885, and what was shown thereby, the court proceeded to say: " It was also shown by said report that the Pennsylvania Railroad Company owned, on December 31, 1885, $1,000,000 of the bonds of the Alexandria & Fredericksburg Railway Company, and $2,000,000 of the bonds of the Baltimore & Potomac Railroad Company, and 60,852 shares of the Baltimore & Potomac Company's stock, and 217,819 shares of the stock of the Philadelphia, Wilmington & Baltimore Railroad Company."

There was also put in evidence in that case a railroad map showing a continuous line of railroad between Philadelphia and Quantico, with letters signifying that the roads embraced therein were the Philadelphia, Wilmington & Baltimore, the Baltimore & Potomac, the Alexandria & Washington, and the Alexandria & Fredericksburg Companies.

It was also proved, says the court, " that a ticket issued by the Pennsylvania Railroad Company was sold in Baltimore, at the office of the Northern Central Railroad Company, on account of the Alexandria & Fredericksburg Railway Company, and it was likewise proved that the Pennsylvania Railroad Company owned stock in the Alexandria & Washington and the Alexandria & Fredericksburg Railway Companies, and that some persons who were officers of the Pennsylvania Railroad Company were likewise officers of these companies. It was also shown that the employees of the Baltimore & Potomac, the Alexandria & Washington, and the Alexandria & Fredericksburg were paid from a pay-car, whose brakeman and conductor wore a blue uniform with silver buttons, which was said to be the uniform of the Pennsylvania Railroad Company.

" Newspaper advertisements were put in evidence, calling the attention of the traveling public to the great Pennsylvania Route to the Northwest and the Southwest, and it was shown that J. R. Wood was general passenger agent, and

Charles E. Pugh, general manager, of the Pennsylvania Railroad Company, stationed at Washington; and it likewise appeared that they occupied similar positions in the Philadelphia, Wilmington & Baltimore, the Baltimore & Potomac, Alexandria & Washington, and the Alexandria & Fredericksburg Companies."

In conclusion, upon the evidence relating to the liability of the Pennsylvania Railroad Company, in that case, the court say: " That the Pennsylvania Railroad Company advertised that it ran trains, or connected with trains of other companies, so as to form through lines, without breaking bulk or transferring passengers, did not tend to show any contract or agreement between the companies to share profits and losses. Nor was there evidence, in the present case, that there was any actual participation by the Pennsylvania Railroad Company in the earnings of the other companies which used the road between the cities of Alexandria and Washington. On the contrary, the evidence affirmatively showed that such earnings, including what was paid by the United States for the transportation of mails, were divided between the other companies, and went, none of them, to the Pennsylvania Railroad Company."

That case would appear so entirely to cover and conclude the present, as to leave no room for question or doubt on the facts of the present case.

It is, however, very earnestly argued for the plaintiff that the recent case of the *Chesapeake & Ohio RR. Co.* v. *Howard,* 178 U. S. 153, affords strong support to the case of the plaintiff; and though the facts of that case are different, yet, it is contended the principle upon which that case was decided, has direct application here. But we do not so read that case. That was an action to recover for personal injuries, and the action was against the railroad company that issued the ticket for safe passage. There was no question as to the identity of the company that made the contract for carriage, but whether the defendant company was liable for the negligence of the agents and servants of the particular road upon which the accident occurred, was the question.

In that case, the female plaintiff, while traveling from Louisville, Kentucky, to Washington City, on a through ticket, in a car of the defendant company, and on a train conducted by its agents, the car was derailed and thrown down a bank, and the plaintiff was seriously injured; and it was for this injury that she sued the company upon whose ticket she was traveling. The defense set up by the company was, that at the time of the occurrence of the accident, the train was managed by a Connecticut company to whom the road had been leased, and that the defendant was not liable for the consequences of the accident. But this court held, and so held the Supreme Court of the United States, that the fact of the lease of the road would not bar a recovery; that if, nothwithstanding the execution of the lease, the defendant company, through its agents and servants, managed and conducted and controlled the train to which the accident happened, it would be responsible for the accident; and that the facts in relation to the management and control of the train were properly left to the jury, and their finding should not be disturbed.

The case in fact has little or no bearing upon the case under consideration. There is certainly nothing in the case that qualifies in any respect the decision in the case of the *Pennsylvania Railroad Company* v. *Jones, supra,* and that case we regard as entirely controlling the present.

It follows, therefore, that the judgment of the court below must be affirmed; and it is so ordered.

*Judgment affirmed.*

A writ of error to the Supreme Court of the United States was prayed and allowed.